GEORGE E. COLE, as Auditor of State of the State of Kansas, et al., v. THE FIRST NATIONAL BANK OF CARROLL, IOWA, et al.

No. 10336.

SUGAR COMPANY—Bounty to Cane-Growers. The Medicine Lodge Sugar Company, Limited, has no right to the money specifically appropriated by chapter 5 of the Laws of 1895 to the cane-growers who furnished cane to the company, nor has it or its assignee any standing in court to attack the specific appropriation made to such cane-growers.

*Error from Shawnee District Court.*

THE First National Bank of Carroll, Iowa, brought an action against the auditor of state, the treasurer of state, and 34 others, alleging that the Medicine Lodge Sugar Company, Limited, a foreign corporation, for more than two years past has been engaged in the manufacture of sugar at Medicine Lodge, for which it was entitled to a bounty under the laws of the state; and that, on August 24, 1894, the sugar company borrowed from the First National Bank of Carroll, Iowa, $3,000, taking therefor an assignment from the sugar company for the bounty theretofore earned and thereafter to be earned during the year 1894 in the manufacture of sugar. It was also alleged that the corporation was indebted to the bank in a large amount, which had been placed in judgment, and by the terms of the assignment any excess of bounty received by the bank after the payment of the $3,000 loan was to be applied on the other indebtedness. There was a further allegation that the legislature of the state, recognizing the liability of the state under the bounty law to the Medicine Lodge Sugar Company, Limited, passed an act on March 2, 1895, appropriating $5,331 to pay the liability of the state to the corporation, but in the act directed that the appropriation should be paid to persons other than the corporation, none of whom had any right or interest in or to the funds so appropriated, or any part thereof; and that the provision directing the payment to these parties was without force and effect. It is averred that the auditor of state is about to issue warrants upon the state treasurer to pay the parties mentioned in the act, and the treasurer is about to pay the same, to the great wrong and irreparable injury of the plaintiff.

The appropriation act referred to, approved March 2, 1895, is as follows:

"An act making appropriation to pay the bounty for certain sugar manufactured in the state of Kansas, for the years 1893 and 1894.

"*Be it enacted by the Legislature of the State of Kansas:*

"Section 1. The sum of five thousand three hundred and thirty-one ($5,331) dollars is hereby appropriated out of any money in the state treasury not otherwise appropriated, for the purpose of paying the bounty, as provided for by an act of the legislature approved, and entitled 'An act to encourage the manufacture of sugar,' as amended by chapter 243 of the Laws of 1889, and chapter 60 of the Laws of 1891: *Provided,* That the said sum so appropriated shall be paid to the cane-growers furnishing cane to the Medicine Lodge Sugar Company, Limited, of Medicine Lodge, Kan., and used in the manufacture of sugar, for the year 1894.

"Sec. 2. This appropriation shall be paid out only upon vouchers verified by affidavit, setting forth the fact that the claimant is entitled to the payment of the claim under and by virtue of section 1 of this act, and shall be applied only to sugar manufactured in the years 1893 and 1894 by the Medicine Lodge Sugar Company, Limited: *Provided,* That the following-named cane-growers furnishing cane for the Medicine Lodge Sugar Company, Limited, of Medicine Lodge, Kan., for the year 1894, shall each be paid the respective amounts following:

| | | | |
|---|---|---|---|
| William Axtel | $37 50 | H. H. Hardy | $54 70 |
| Mary Best | 1,689 80 | K. Lammerman | 8 00 |
| Ed. Brattain | 2 00 | J. R. Litz | 80 00 |
| B. S. Brewer | 58 06 | Miller & Benedict | 201 00 |
| J. Beyert | 55 00 | George Mawson | 265 00 |
| L. Van Buskirk | 7 75 | J. McDowell | 113 50 |
| J. L. Cheneweth | 46 50 | C. W. Pease | 164 00 |
| O. Coyle | 81 00 | N. S. Priest | 59 00 |
| Fred. Ellis | 34 00 | W. H. Revis | 17 00 |
| Peter Dursto | 48 50 | M. C. Sparks | 216 00 |
| J. L. Ellsworth | 122 50 | W. H. Sparks | 47 00 |
| W. O. Horr | 132 00 | E. H. Stout | 6 00 |
| H. Fuller | 60 00 | Thomas Timmis | 43 50 |
| L. M. Field | 770 00 | George Vig | 29 00 |
| R. Hamilton | 65 62 | B. E. Wadsworth | 195 00 |
| G. W. Keydenreik | 22 50 | R. C. Warren | 111 45 |
| A. Hada | 230 00 | | |

"S. R. Willan, $258.12, upon his claim out of said sum of five thousand three hundred and thirty-one ($5,331) dollars.

"SEC. 3. This act shall be in force and take effect from and after its publication in the official state paper."

Upon the averments of the petition, which were taken as true, the district court granted a temporary injunction, restraining the auditor of state and the treasurer of state from paying out funds in accordance with the provisions of the act. Defendants bring the case here. The opinion herein was filed March 7, 1896.

*F. B. Dawes*, attorney general, *W. C. Webb*, and *Ed. Sample*, for plaintiffs in error.

*H. M. Jackson*, for defendant in error The First National Bank of Carroll, Iowa.

The opinion of the court was delivered by

JOHNSTON, J. : The language of the act (Laws 1895, ch. 5) leaves no doubt of the legislative purpose. It was to appropriate specific sums to the 34 persons named therein, who had furnished cane to the sugar company. It may be that under the prior acts providing for the payment of bounty by the state for the manufacture of sugar, the sugar company had earned a share of the promised bounty, and that a moral obligation rested upon the state to pay it. If such an obligation exists, it is one which cannot be enforced against the state by the sugar company. The payment of such an obligation rests entirely with the legislature, and until a specific appropriation is made by that department, not a dollar of the public money can be withdrawn for that purpose.

The claim that so much of the act as designates the

persons to whom the money appropriated should be
paid may be ignored, and the remaining provisions,
which it is claimed would authorize the payment of
the money to the sugar company or its assignees,
treated as valid, cannot be sustained. To strike down
that part of the act which specifically provides who
shall receive the money, and then, upon an interpre-
tation of the emasculated act, declare that the money
should be paid to others, would be a plain disregard
of the legislative will, and would be an exercise of a
power which the court does not possess. The judi-
ciary cannot prescribe to the legislative department
limitations upon the exercise of an acknowledged
power. The legislative power may appear to be ex-
ercised inequitably, but, so long as it is within the
constitutional limits, the power is supreme. Moneys
rightfully in the state treasury cannot be withdrawn
"except in pursuance of a specific appropriation made
by law." (Const., art. 2, § 24.) The appropriation
made is specific, and designates particularly who shall
receive it. To eliminate that provision would be to
divert public moneys to purposes and persons other
than those intended by the legislature, when, as
counsel well says, the court has no power whatever
over moneys in the state treasury, or over the cus-
todians of the public moneys, for the purpose of di-
recting their payment, except in aid of a "specific
appropriation made by law." The court, in proper
cases, may adjudge a legislative act to be partially or
wholly void ; but, if there is any weakness in the pro-
visions of the act in question, the bank is not in a
position to question it. No money has been set apart
to the bank or the sugar company which they can
claim, and the provisions encouraging the manufac-
ture of sugar and providing for the payment of boun-

ties under certain circumstances gave them no right to any particular fund or moneys. If by virtue of those acts they have an equitable claim against the state they should look to the legislature. It cannot be obtained upon an attempt to obstruct an appropriation made to others, nor can it be paid out of the state treasury until a specific appropriation is made by law for that purpose. For some reason which the legislature deemed to be sufficient, money was appropriated to pay the cane-growers who furnished cane to the sugar company. It may be that those who furnished the cane were not paid for the same, and that it was thought that they had a stronger claim upon the state for the bounty than those who converted it into sugar. Whatever may have been the moving influence, it is clear that the legislature did appropriate money for the cane-growers, and did not appropriate any for the sugar company or its assignee. The state does not question the validity of the appropriation to the cane-growers, and the bank is a mere volunteer who has no authority to act as guardian of the treasury, nor any standing in court to attack a specific appropriation made to other parties.

The judgment will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.